**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| In re: )<br>Building Materials Corporation of America )<br>Asphalt Roofing Shingle Products Liability )<br>Litigation, )<br>_____ )<br> )<br>Kathleen Erickson, individually and )<br>on behalf of all others similarly situated, )<br> )<br>         Plaintiff, )<br> )<br>       vs. )<br> )<br>Building Materials Corporation of America, )<br>dba GAF Materials Corporation, )<br> )<br>        Defendant. )<br>_____ ) | MDL No.: 8:11-mn-02000-JMC<br><br><br><br><br><br>Civil Action No.: 8:11-cv-03085-JMC<br><br>**ORDER AND OPINION** |

This matter is before the court on Defendant Building Materials Corporation of America, doing business as GAF Materials Corporation's ("GAF"), Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 19]. Extensive memoranda in support of and in opposition to these motions have been filed by the parties. Having considered the written arguments of the parties and the record before the court, GAF's motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

GAF is a Delaware corporation with its principal place of business in Wayne, New Jersey. It manufactures roofing materials, including asphalt roofing shingles marketed under the Timberline® brand name, in facilities located across the United States and sells these shingles nationwide. Plaintiff Kathleen Erickson ("Erickson") is a homeowner in Chapel Hill, North

Carolina, who alleges that she arranged for the purchase and installation of Timberline shingles on the roof of her home.   Pursuant to Erickson's warranty claim submission form, the shingles were purchased in or around November 1999.  In purchasing the shingles, Erickson contends that she relied on certain representations made by GAF and its agents including, but not limited to, promotional statements marketing the shingles as having superior durability qualities and expressly warranting on the shingle packaging that the product complied with ASTM International ("ASTM") industrial standard D3462.  She further alleges that the shingles installed on her roof were manufactured and sold to her with a latent defect that causes the shingles to prematurely crack, of which GAF was aware but intentionally failed to disclose to Erickson and other consumers.   Erickson brings this putative class action against GAF asserting claims for breach of express and implied warranties (counts I and II);  negligence and negligent failure to warn (counts III and IV); violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUTPA") (count VI); fraudulent concealment/equitable tolling (count VIII); and declaratory and injunctive relief (count VII) arising from GAF's sale of the allegedly defective roofing shingles.

## LEGAL STANDARD

**Standard of Review**

To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and

2

the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[1] Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual

---

[1] The parties disagree as to whether the court may consider Erickson's warranty claim form in addressing GAF's motion. GAF contends that Erickson has explicitly incorporated and referenced the claim in the Amended Complaint. Erickson argues that GAF is simply attempting to divert the court's attention away from the actual substance of the allegations of the Amended Complaint. Upon review of the Amended Complaint, it appears that Erickson expressly references the filing of her warranty claim and extensively quotes language from the text of the claim in partial support for her claim of breach of express warranty. *See* Amended Complaint, at ¶¶ 110-14 [Dkt. No. 17]. Accordingly, the court finds that it may consider the warranty claim in assessing GAF's motion. *See Beasley v. Arcapita, Inc.*, 436 F. App'x. 264 (4th Cir. 2011) (acknowledging that a court may consider documents attached to a motion to dismiss if such documents are integral and explicitly relied on by the plaintiff in the complaint, provided that the plaintiff does not dispute the authenticity of the documents); *but see Braun v. Maynard*, 652 F.3d 557 (4th Cir. 2011) (noting that, on motion to dismiss, the court should not consider a document not relied upon expressly by the plaintiff in the complaint).

support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**Choice of Law**

"This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. For diversity cases that are transferred in a [multi-district litigation], the law of the transferor district follows the case to the transferee district." *In re MI Windows and Doors, Inc. Prod. Liab. Litig.*, Nos. 2:12–mn–00001, 2:12–cv–01256–DCN, 2012 WL 4846987, at *1 (D.S.C. Oct. 11, 2012) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) and *Manual for Complex Litigation Fourth* § 20.132). This case was originally filed in the United States District Court for the District of New Jersey. Therefore, New Jersey's choice of law rules apply in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (per curiam); *Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992).

The court may appropriately undertake a choice of law analysis at the motion to dismiss stage where the factual record is sufficiently developed to facilitate the resolution of the issue. *See id.* at 718 ("In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues 'require a full factual record' or not.") (citing *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009)). If the choice of law analysis requires the determination of purely legal issues or if the complaint provides the relevant factual information for the court's evaluation of the relevant factors, the court may properly make a choice of law determination. *See Montich*, 849 F. Supp. 2d at 445 ("whether a conflict

exists between the laws of the two jurisdictions — demands a purely legal analysis and requires no factual record."); and *id.* at 448 (noting that the plaintiff's complaint included "sufficient facts from which this Court can determine which law should apply" to the claims).

Erickson has essentially conceded the applicability of North Carolina law in all claims except the NJCFA claim as she primarily relies on law from the United States Court of Appeals for the Fourth Circuit, the United States District Courts in North Carolina, and North Carolina state law throughout her response memorandum and only challenges the choice of law issue as it applies to the NJCFA claim. Accordingly, the court will focus its analysis of the choice of law issue on the NJCFA claim.

## DISCUSSION

**Timeliness of Legal Action**

### A. Statute of Repose

GAF asserts that Erickson's claims based on warranty, negligence, and fraud theories are barred by North Carolina's six-year statute of repose applicable to product liability actions. *See* N.C. Gen. Stat. § 1-50(6)(2008). Erickson refutes GAF's position, contending that GAF waived its statute of repose arguments by issuing an express warranty extending coverage for the shingles far beyond the statutory limit. *See* Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments ("Plaintiffs' Omnibus Memorandum") [MDL No. 8:11-mn-02000-JMC, Dkt. No. 71].

Unlike a statute of limitations, a statute of repose is a condition precedent to the recognition of a cause of action. *See Jack H. Winslow Farms, Inc. v. Dedmon*, 615 S.E.2d 41, 44 (N.C. Ct. App. 2005) (citing *Boudreau v. Baughman*, 368 S.E.2d 849, 856-57 (N.C. 1988)).

"If the action is not brought within the specified period, the plaintiff literally has no cause of action." *Id.* The statute of repose effective for purposes of this case provided that

> No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

N.C. Gen. Stat. § 1-50(6)(2008).[2] North Carolina courts generally applied this statute of repose to bar negligence, warranty, and fraud claims against manufacturers if the claim was not commenced within the six-year time period. *See Jack H. Winslow Farms, Inc.*, 615 S.E.2d at 44 (citations omitted). Although statutes of repose may not be equitably tolled, *see State ex rel Long v. Petree Stockton, L.L.P.,* 499 S.E.2d 790, 798 (N.C. Ct. App. 1998), courts applying North Carolina law have acknowledged that a claimant may bring a cause of action for breach of express warranty beyond the statute of repose based upon evidence of a waiver contained in an extended warranty or contract. *See Jack H. Winslow Farms, Inc.*, 615 S.E.2d at 45 (citations omitted). ("Absent evidence of extended warranties, contracts, or otherwise upon which to base an action, plaintiff had six years from the date of purchase to bring claims against the manufacturer for defects or failures arising from the product."); *see also Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 782 (4th Cir. 2012) (noting that the District Court in *Hart v. Louisiana–Pacific Corp.*, No. 2:08–cv–47–BO (E.D.N.C. Nov. 21, 2008), acknowledged plaintiff's assertion of only a breach of express warranty claim "because North Carolina's statute of repose barred any tort claims that the class plaintiffs could have asserted.").

Here, Erickson has alleged that her causes of action against GAF founded in warranty, negligence, and fraud theories are based – at least in part – on GAF's representations concerning

---

[2] Section 1-50(6) (2008) was repealed by S.L. 2009-420, § 1, eff. Oct. 1, 2009, and replaced with N.C. Gen. Stat. §1-46.1 (2009) (providing for a twelve year statute of repose in product liability actions). The repeal applied to all causes of action accruing on or after the effective date. Accordingly, § 1-50(6) would be the operative statute in this case.

the ASTM certifications affixed to the product packaging and the GAF Smart Choice Shingle Limited Warranty ("Smart Choice Warranty") [Dkt. No. 19-8][3] extending the warranty of the product beyond the statute of repose provided by North Carolina law.  In addition to extending the warranty period beyond the North Carolina statute of repose for certain warranty actions, the Smart Choice Warranty also expressly limits GAF's liability for all other claims, including those arising from negligence and any other cause, to the remedies provided in the Smart Choice Warranty.  [Dkt. No. 19-8].  This express limitation, which was readily available for Erickson to review, as it was affixed to the product packaging on which she purportedly relied, is consistent with the application of the statute of repose under North Carolina law.    *See supra Jack H. Winslow Farms, Inc. v. Dedmon*; *Ellis v. Louisiana-Pacific Corp.*; and *Hart v. Louisiana–Pacific Corp.*  Accordingly, the Erickson's negligence and fraud based claims are dismissed with prejudice on the ground that they are barred by the statute of repose.  The court denies GAF's motion to dismiss Erickson's warranty claims on the basis of the statute of repose as set forth above.

### B.  Statute of Limitations[4]

GAF contends that, even if Erickson's warranty claims are not barred by North Carolina's statute of repose, Erickson's warranty claims fail because the statute of limitations expired before she commenced her action against GAF.

---

[3] The GAF Smart Choice Shingle Limited Warranty is attached as Exhibit B to the Affidavit of Linda Marion submitted by GAF in support of its motion.  Erickson has not disputed the authenticity of the document and has expressly relied upon the warranty in his Amended Complaint.

[4] Because the court has found that the North Carolina statute of repose bars any recognition of Erickson's negligence claims, the court need not address GAF's statute of limitations arguments concerning Erickson's negligence claims.

GAF asserts that the North Carolina four-year statute of limitations for breach of warranty in the sale of goods applies to this action.[5]  *See* N.C. Gen. Stat. § 25-2-725(1).

> A cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.C. Gen. Stat. § 25-2-725(2).

Warranties extending to future performance must expressly refer to the future. *See Bernick v. Jurden*, 293 S.E.2d 405, 412 n.3 (1982) (citing *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F. Supp. 765 (E.D.N.Y. 1978)); *see also Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, No. 5:97–CV–683–BR(2), 1999 WL 33483547, at *5 (E.D.N.C. June 9, 1999) (noting that a warranty as to future performance must be specific and express).   North Carolina courts have found that a contract including a continuing duty to repair may evidence an explicit warranty that anticipates future performance.  *See Monson v. Paramount Homes, Inc.*, 515 S.E.2d 445, 448 (N.C. Ct. App. 1999) (discussing the manner in which contracts for continuing duties to repair may implicate warranties for future performance); *Haywood St. Redevelopment Corp. v. Peterson Co.*, 463 S.E.2d 564 (1995) (finding that the warranty in that case was "in the nature of a prospective warranty, in that it guarantee[d] the future performance of the waterproofing for a stated period of time.").

Erickson, relying solely on Plaintiffs' Omnibus Memorandum, vigorously argues that her warranty claims should survive because GAF's alleged marketing and advertising representations that the shingles would last a certain number of years was sufficient to constitute

---

[5] Erickson does not dispute the application of the four-year statute of limitations pursuant to N.C. Gen. Stat. § 25-2-725 in this case.  Therefore, the court will assume without deciding, that the warranty claims are subject to this statute of limitations and not any other.

a warranty for future performance under N.C. Gen. Stat. § 25-2-725(2).  However, Erickson's Amended Complaint does not allege that GAF specifically and expressly warranted the future performance of the shingles.  Instead, the Smart Choice Warranty affixed to the shingle packaging simply provided for a schedule of compensation in the event the shingles manifested a defect or failed to perform within certain limitations over a specified number of years.  *See* Smart Choice Warranty [Dkt. No. 19-8]. Therefore, the court does not find that Erickson has sufficiently pled factual allegations to support a claim that GAF extended a warranty for future performance.

However. Erickson additionally contends that her claim is still timely filed because the statute of limitations was equitably tolled by GAF's acts of fraudulent concealment.  "Fraudulent concealment is an equitable doctrine which can toll the running of the statute of limitations. . . . [It] halts the running of the statute of limitations to allow untimely suits to be deemed timely filed."  *Wilkerson v. Christian*, No. 1:06CV00871, 2008 WL 483445, at *11 (M.D.N.C. Feb. 19, 2008) (citations omitted).  "[F]raudulent concealment can toll the statute of limitations where plaintiff can show 'that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose.'"  *Id*. (quoting *Friedland v. Gales*, 509 S.E.2d 793, 807-08 (N.C. Ct. App. 1998)).

In her Amended Complaint, Erickson alleges that GAF affirmatively misrepresented the quality of its product by marketing and labeling its shingles as ASTM and code compliant despite GAF's alleged knowledge that such representations were false.  *See generally,* Amended Complaint.  Erickson further alleges that, due to the latent nature of the alleged defect, she had no reasonable method of discovering her cause of action until the product began to manifest an issue which would have prompted some manner of inquiry as to the source of the problem.  *Id*.

The court finds that Erickson has sufficiently alleged fraudulent concealment/equitable tolling to survive GAF's efforts to dismiss her warranty claims based on the statute of limitations. Therefore, the court denies GAF's request to dismiss Erickson's warranty claims on this basis.

**Warranty Claims**

   **A. Warranty Disclaimer**

GAF contends that the court should dismiss Erickson's warranty claims because GAF effectively disclaimed all express and implied warranties except as set forth in GAF's Smart Choice Warranty.

North Carolina statutory law allows for the exclusion or modification of warranties. N.C. Gen. Stat. § 25-2-316 provides, in part,

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (G.S. 25-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> 3) Notwithstanding subsection (2): (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty. . . .

In her Amended Complaint, Erickson specifically alleges that she and the installing contractor, "when purchasing GAF Timberline shingles, . . . relied on the accuracy of the designations affixed to the shingles and their packaging." Amended Complaint, at ¶ 120. As

represented by Linda Marion, the Smart Choice Warranty [Dkt. No. 23-8] was also affixed to every package of GAF shingles. The Smart Choice Warranty explicitly limits coverage and provides for a "**Sole and Exclusive Warranty**" that is "EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE." *Id.* (emphasis in original).

Upon review of the disclaimer in the Smart Choice Warranty document that GAF contends was affixed to the packaging of the shingles, which Erickson does not dispute, the court finds that the disclaimer complies with the statute allowing exclusion or modification of warranties. Specifically, the disclaimer appears in all capital letters directly below a heading captioned in bold type. Indeed, Erickson does not even refute GAF's argument that the disclaimer complies with the statutory requirements. Instead, Erickson argues that GAF's disclaimer and efforts to limit its express warranties fail because the Smart Choice Warranty is unconscionable.

Incorporating the arguments from Plaintiffs' Omnibus Memorandum, Erickson contends that the warranty disclaimers and remedial limitations found in GAF's Smart Choice Warranty are unconscionable and unenforceable against her and members of the purported class because GAF knew of the alleged defects in the shingles when it sold them and concealed the defects from consumers to induce sales and avoid its obligations under its warranty.

> A court will find a contract to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. A party asserting the defense of unconscionability must prove that the contract is both procedurally and substantively unconscionable. Procedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. Substantive

unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms.

*Stewart v. Legal Helpers Debt Resolution, LLC*, Civil No. 2:11cv26, 2012 WL 1969624, at *5 (W.D.N.C. June 01, 2012) (quoting *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369-70 (2008)).

In the Amended Complaint, Erickson makes various allegations concerning the unfairness and unreasonableness of certain provisions contained in the warranty claim form, which Erickson further alleges was not part of the Smart Choice Warranty attached to the shingle packaging. *See* Amended Complaint, at ¶¶132-135. Throughout the Amended Complaint, Erickson additionally alleges that GAF possessed superior knowledge concerning the condition of the shingles which she and the purported class members did not possess, thereby placing them in a significantly inferior bargaining position at the time of the purchase. *See generally* Amended Complaint. Based on the allegations of the Amended Complaint, the court finds that Erickson has sufficiently alleged that the warranty disclaimer was unconscionable or unenforceable. Therefore, the court denies GAF's request to dismiss Erickson's warranty claims on this basis.

### B. Privity of Contract

GAF seeks dismissal of Erickson's cause of action for breach of implied warranty under the premise that North Carolina law requires privity of contract to recover on an implied warranty claim and Erickson has failed to plead any factual allegations of the existence of privity between her and GAF.

Under North Carolina common law, a claim for breach of implied warranty generally requires privity of contract to establish liability. *See Phillips v. Rest. Mgmt. of Carolina, L.P.*, 552 S.E.2d 686, 695-96 (N.C. Ct. App. 2001) (citations omitted). "However, the North Carolina

Products Liability Act eliminated the privity requirement against manufacturers, but only for actions seeking recovery for personal injury or property damage.  Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss." *Atlantic Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C, Inc.*, 623 S.E.2d 334, 339 (N.C. Ct. App. 2006) (citing N.C. Gen. Stat. § 99B–2(b)).

Here, Erickson alleges only economic loss.  *See infra* Economic Loss Doctrine Section. Therefore, privity is required for Erickson to maintain her claim for breach of implied warranty. Although Erickson asserts that the Amended Complaint adequately alleges privity of contract, this court's review of the Amended Complaint reveals no such allegations.  In Erickson's Amended Complaint, she makes vague proclamations such as "Erickson and the installing contractor, when purchasing GAF Timberline shingles . . ." and "Erickson and the installing contractor . . . when deciding to purchase the GAF shingles. . ."  *See* Amended Complaint, at ¶¶ 120 and 122.  However, the Amended Complaint never clearly alleges who actually purchased the shingles – Erickson or the installing contractor or both – and from whom the shingles were purchased.  Erickson's failure to adequately plead the element of privity in support of her breach of implied warranty claim is fatal under North Carolina law and, therefore, the claim must be dismissed.  *See Atlantic Coast Mech., Inc.*, 623 S.E.2d at 339.

**Effect of Economic Loss Doctrine on Negligence and Fraud Claims**

**A.  Negligence Claims**

As an alternative ground for dismissal, GAF contends that Erickson's claims of negligence are barred by North Carolina's economic loss rule and, therefore, the court should dismiss all negligence based causes of action.

Under North Carolina law, "the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." *Lord v. Customized Consulting Specialty, Inc.*, 643 S.E.2d 28, 30 (N.C. Ct. App. 2007) (citation omitted).  While a tort claimant may not recover for purely economic losses – those damages caused to the product itself – a claimant may seek tort recovery for damages to property other than the product itself or personal injuries attributable to the defective product.  *Id.*

> The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. Thus, the rule encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor. For that reason, a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

*Id.* at 30-31 (citations and quotation marks omitted).

Here, the parties dispute whether Erickson has adequately alleged damage to "other property" to survive dismissal.  GAF vigorously contends that Erickson has not alleged any damages related to the purported defect associated with the ASTM representation.  First, GAF notes that Erickson fails to allege anywhere in the Amended Complaint any specific damage to property other than the shingles on her roof.  In support of its argument, GAF directs the court to several allegations in the Amended Complaint where Erickson alleges in a conclusory manner, without any factual support, that she has a "real and present injury in that she owns a home with substandard and damaged shingles that do not comply with ASTM D3462," and that the damage "includes the cost to replace the shingles to become code compliant and to avoid further damage to other parts of the structure," as well as "the cost of repairing the damage to . . . other property

that was caused by GAF's sale of defective shingles."  Amended Complaint, at ¶139.  Other allegations in the Amended Complaint generally refer to "damage to property other than the GAF shingles, consequential, and incidental damages."  *Id.* at ¶ 40.

Other than conclusory statements concerning speculative and hypothetical damage to Erickson's property and that of the putative class members, the court finds that Erickson has failed to sufficiently allege any damage to "other property."  Additionally, it is undisputed that this case does not involve any allegations of personal injury.  Without any allegation of actual injury to property other than the defective product itself and the consequential damages resulting from the replacement of the defective product, Erickson has presented the court with tort actions merely sounding in negligence which fall squarely within the parameters of those actions barred by North Carolina law.  Accordingly, the negligence claims must be dismissed.

### B.  Fraud Claims

GAF further asserts, in the alternative, that Erickson's fraud claims under North Carolina law are also barred by the economic loss doctrine.

Although the law is unsettled in North Carolina concerning whether fraud and unfair and deceptive trade practices claims are barred by the economic loss rule, federal district courts interpreting North Carolina law have recently found such claims barred "where the only alleged damage from a defective product is to the product itself and 'the allegations of unfair and deceptive trade practices are intertwined with the breach of contract or warranty claims.'"  *Ellis v. Louisiana-Pacific Corp.*, No. 3:11CV191, 2011 WL 5402878, at *2 (W.D.N.C. Nov. 8, 2011) (quoting *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006)).  Additionally, the United States Court of Appeals for the Fourth Circuit has found error in allowing an unfair and deceptive trade practices claim to proceed under North Carolina law

where the claim essentially alleged a contractual breach. *See Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 346 (4th Cir. 1998).

Erickson contends that her claims are distinguishable from the cases cited above because her warranty claims are based on GAF's selling shingles that were defective and noncompliant with ASTM certifications, while her NCUTPA claims are based on, among other things, GAF knowingly making and engaging in fraudulent, misleading, and deceptive statements and practices. Erickson contends that her claims are not intertwined because she could have brought either claim without the other. However, upon review of the Amended Complaint, the court determines that Erickson relies upon the alleged representations concerning the ASTM certification and the useful life of the shingles for both claims in such a way that the claims are intertwined similar to the relationship of the claims in *Bussian* and *Ellis*. Accordingly, the court finds that Erickson's North Carolina law fraud based claims are also barred by the economic loss doctrine and must be dismissed.

**Sufficiency of Fraud Allegations Under Federal Rule of Civil Procedure 9**

GAF seeks dismissal of all claims contained in Erickson's Amended Complaint which are based on allegations of fraudulent conduct (i.e., violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUTPA") (count VI); and fraudulent concealment/equitable tolling (count VIII)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*

*v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984)), *abrogated on other grounds by, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The United States Court of Appeals for the Third Circuit has generally held that the standard is met where the plaintiff pleads or alleges "the date, time and place of the alleged fraud or otherwise inject[s] precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007) (citations and quotation marks omitted). The "[p]laintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 224.

Upon review of the Amended Complaint, the court finds that the majority of Erickson's claims of fraudulent conduct do not meet the heightened standard of Rule 9(b). Although Erickson's Amended Complaint contains copious allegations concerning GAF's advertising, marketing, and fraudulent concealment of information, Erickson fails to specify the time, place, or manner of these alleged fraudulent activities. In fact, Erickson's Amended Complaint predominantly rests on broad assertions regarding GAF's conduct in other litigation. Erickson's allegations against GAF regarding its alleged statements in brochures, on websites, in advertising, or in sales presentations fail the pleading standard of Rule 9(b) and cannot support Erickson's fraud based causes of action.

However, Erickson has not made any independent claim for common law fraud. Therefore, Erickson need plead only one allegation of fraudulent conduct with sufficient particularity to survive dismissal, which the court finds that Morocco has sufficiently provided here. Specifically, Erickson claims that she and anyone purchasing the shingles on her behalf relied on the written representations regarding the ASTM standards and code compliance affixed

to the shingles packaging purchased and installed on Erickson's home in North Carolina in 1999. *See* Amended Complaint, at ¶¶ 117-122. This allegation supplies the necessary who, what, when, and where to meet the Rule 9(b) pleading standard. Therefore, the court will not base its dismissal of Erickson's fraud based claims on this argument, to the extent the fraud claims could have been supported by her allegations concerning the representations affixed to the shingle packaging purchased and installed on her home.

**Proximate Cause**

GAF also contends that Erickson's fraud based claims must be dismissed because she has failed to allege that she has suffered a cognizable injury that was proximately caused by the fraudulent conduct. Specifically, GAF complains that the Amended Complaint contains references to alleged representations and statements that purportedly occurred after Erickson's purchase of the subject shingles in 1999.

Liberally construing the Amended Complaint in favor of Morocco, as the court must at the motion to dismiss stage of the litigation, GAF's objections to the sufficiency of Erickson's allegations regarding proximate cause are misplaced. Erickson's Amended Complaint contains multiple allegations of injuries which she contends are proximately caused by GAF's marketing and selling of shingles which purportedly fail to comply with ASTM D3462; a representation that Erickson alleges was attached to the packaging of the shingles and on which she relied. Accordingly, the court finds GAF's claims of insufficient allegations of proximate cause to be an inadequate basis upon which to grant its motion.

**New Jersey Consumer Fraud Act**

GAF further argues that the court should dismiss Erickson's NJCFA claim because he is not entitled to any relief under the statute. Specifically, GAF complains that Erickson is a North

Carolina resident, that he purchased and installed the subject shingles in North Carolina, and was exposed to the allegedly fraudulent statements in North Carolina; therefore, North Carolina substantive law applies to his claims in accordance with New Jersey's choice of law rules.

New Jersey utilizes the "most significant relationship" test as found in the Restatement (Second) of Conflict of Laws. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2011).

> This analysis, which must be performed on an issue-by-issue basis, is a two-step process. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. Second, if a conflict does exist, the Court must determine which state has the most significant relationship to the claim, by weighing the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.

*Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (citations and quotation marks omitted).

### A. Existence of Actual Conflict

To determine whether Morocco may proceed with his cause of action under the NJCFA, this court must first evaluate whether there is a conflict between the consumer protection laws of North Carolina and New Jersey. This inquiry has been held to be a purely legal issue that requires no factual background. *See Montich*, 849 F. Supp. 2d at 445. Although neither party expressly addressed this threshold issue in their briefing, the court presumes that the parties intended to aver the existence of an actual conflict between the laws of the two jurisdictions concerning misleading advertising because in the absence of a conflict, New Jersey law would necessarily apply and it would have been unnecessary for the parties to address the significant relationship prong of the choice of law analysis.

The NJCFA, *see* N.J. Stat. § 56:8-1 *et seq.*, "is designed to address 'sharp practices and dealings . . . whereby the consumer could be victimized by being lured into a purchase through

fraudulent, deceptive or other similar kind of selling or advertising practices.'" *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (quoting *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271, 390 A.2d 566 (1978)). To state a claim under the NJCFA, "a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. A party need not plead reliance under the NJCFA." *Id*. at 446.

Recovery under NCUTPA "is limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement or misrepresentation and he or she 'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" *Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643, 651 (N.C. Ct. App. 1990). Given that a claim under the NJCFA does not include the element of reliance but similar claims under North Carolina laws do, there is a conflict of law. Therefore, the court may not apply the NJCFA without determining whether there is a significant relationship between Erickson's claims and the disputed jurisdictions.

### B.  Significant Relationship Test

To determine which jurisdiction has the most significant relationship to Erickson's claims in this case, the court "must weigh the factors set forth in the Restatement section that corresponds to [Morocco's] cause of action. *See Montich*, 849 F. Supp. 2d at 445. Where a plaintiff raises claims based on fraud and misrepresentation, Restatement Section 148 applies. *Id*. It provides

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant

20

relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

    (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
    (b) the place where the plaintiff received the representations,
    (c) the place where the defendant made the representations,
    (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
    (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
    (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148.  New Jersey courts also consider the general conflict of law principles found in Restatement Section 6 in analyzing the Section 148 factors, including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states."  *P.V. v. Camp Jaycee*, 197 N.J. 132, 147, 962 A.2d 453 (2008) (citing to *Restatement (Second) of Conflict of Laws* § 6) (citations omitted).

Taking the allegations of the Amended Complaint as true, it is apparent that subsection (1) is inapplicable here as Erickson alleges that GAF's advertising and marketing statements and representations were made or originated from GAF's headquarters in New Jersey but acknowledges that her exposure to the statements and representations was limited to her review of the shingle packaging in North Carolina.  Accordingly, the court will apply the factors specified in subsection (2) of Restatement Section 148.  Based on the allegations of the Amended Complaint, Erickson allegedly became aware of and relied upon GAF's representations in North

Carolina.  Additionally, the Amended Complaint alleges that the subject shingles were located in North Carolina at all relevant times of Erickson's awareness and reliance on the representations. Erickson alleges that GAF made the representations from its headquarters in New Jersey.  Lastly, the contract performance obligation factor has no application here, and the remaining factors have neutral application because each party resides in their respective jurisdictions.   In sum, three of the six factors of Section 148 weigh in favor of applying North Carolina law.  Viewing this in consideration of the general conflict of law principles found in Restatement Section 6, the court finds that North Carolina law is applicable to Erickson's claims and she may not recover under the NJCFA.  This finding is consistent with other courts' evaluation of similar claims.  *See e.g., Montich*, 849 F. Supp. 2d at 449 ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2).") (collecting cases).  Therefore, the court dismisses Erickson's NJCFA cause of action against GAF with prejudice.

**Declaratory and Injunctive Relief**

Finally, GAF seeks dismissal of Erickson's claims for a declaratory judgment and injunctive relief on the basis that Erickson has only asserted remedies and not independent causes of action.

It is well-established under North Carolina law that claims for declaratory and injunctive relief are more in the nature of alternative remedies that may be awarded once a party prevails on a proper cause of action, and not causes of action to be pursued independent of an underlying claim.  *See Laws v. Priority Tr. Serv. of N.C.*, 610 F. Supp. 2d 528 (W.D.N.C. 2009).  While

Erickson may request declaratory and injunctive relief as remedies where appropriate based on properly stated causes of action, the court must conclude that the Amended Complaint fails to state an independent basis for either declaratory or injunctive relief separate and apart from the other causes of action asserted in the Amended Complaint.  Therefore, the court shall consider Erickson's claims for injunctive and declaratory relief as alternative and/or additional remedies for the causes of action already asserted but dismiss the claims as independent causes of action.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** GAF Materials Corporation's Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 19] as set forth herein.  Plaintiff Kathleen Erickson may amend her complaint to address the deficiencies noted by the court in this order in support of her warranty claims.  Any such amended pleading must be filed within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

January 16, 2012
Greenville, South Carolina